# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Theo Smith,

    Plaintiff,

v.

Faure Essozimna Gnassingbe, President; and Faure Essozimna Gnassingbe, The Republic of Togo;

    Defendants.

Civ. No. 07-4167 (ADM/JJK)

**REPORT AND RECOMMENDATION**

## INTRODUCTION

This matter is before this Court for a Report and Recommendation on Plaintiff's Motion [for] Entry of Default and Default Judgment (Doc. No. 6). *See* 28 U.S.C. § 636(b)(1) and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Plaintiff's default judgment motion be denied and the Complaint be dismissed without prejudice for lack of prosecution.

## BACKGROUND

On October 3, 2007, Plaintiff filed the Complaint in this matter and a summons was issued as to Defendants. (Doc. No. 1.) Over one year later, a summons was reissued as to Defendants. On February 25, 2009, Plaintiff filed a Certificate of Service certifying that a copy of the Summons and Complaint were served through the Minnesota Secretary of State's office on January 22, 2009, "on Defendant the Republic of Togo/Ministry of Foreign Affairs by U.S. mail

pursuant to Minnesota statute 303.13[.]" (Doc. No. 5 at 1.) Plaintiff's Certificate of Service also states that "[u]nder special arrangement 28 U.S.C. Sec. 1608(a)(1), a copy of the Summons and Complaint were sent Registered Mail (RB067945585US) to Mr. Faure Essozimna Gnassingbe, President [on] 01/10/2009." (*Id.* at 5.)

On March 16, 2009, Plaintiff filed his Motion [for] Entry of Default and Default Judgment. (Doc. No. 6.) In his motion, Plaintiff asserts that Defendants were served with the Summons and Complaint on October 3, 2007, through the Clerk of Court, and that these documents were served by the Minnesota Secretary of State on January 10, 2009, when copies were sent by registered mail. (*Id.* ¶ 3.) Plaintiff also asserts that "[o]n March 16, 2009, the Court of Clerk entered a default against defendants." (*Id.* ¶ 4.) In support of these assertions, Plaintiff has filed Service of Process Acknowledgement forms from the Minnesota Secretary of State, trade-statistics sheets, and his own applications for entry of default against Defendants. (*Id.* at Attachs. 1-5.) He has also filed a Declaration under Penalty of Perjury (Doc. No. 7), in which he makes several factual allegations. These include: (1) that he communicated with an individual named "Col. Gnassingbe Eyadema" [which may be another name for Defendant Faure Essozimna Gnassingbe,] in 2004 concerning "the government's duty to enforce the legal Agreement between [Plaintiff] and one of the transportation agents of the military government" (*id.* ¶ 5); (2) that he informed Togo's ambassador to the United States that he would attempt to resolve his dispute through litigation (*id.*

2

¶ 6); and (3) that a contract was formed between Plaintiff and "Mr. Sherik E. Yosso, Director, of BUOL-ICON SARL [an export company apparently created by Togo's government] to sell at first 250kg of gold dust in the U.S.A. with the balance of 150kg to be sold last." (*Id.* ¶ 9.)

On April 3, 2009, this Court issued an Order to Show Cause (Doc. No. 12), and an Amended Order to Show Cause (Doc. No. 13), "why this case should not be dismissed for failure to comply with Federal Rules of Civil Procedure 4(f) and 4(j), and 28 U.S.C. § 1608, regarding service of process, and failure to prosecute in a diligent fashion." (Doc. Nos. 12 and 13.) On April 20, 2009, Plaintiff filed his Response to the Order to Show Cause to the Order April 3, 2009 (Doc. No. 14), which provides an account of his efforts at service.

In his response, Plaintiff asserts that "[s]pecial arrangement [under 28 U.S.C. § 1608(a)(1)] of service for the lawsuit was made between Plaintiff and state of Togo" through a "face to face meeting" with Togo's Ambassador in Washington, D.C., in November 2004. (*Id.* ¶ 3.) He also states that the "special arrangement" was established when the ambassador did not object to any method of service. (*Id.* ¶ 4.) Further, Plaintiff alleges that he attempted to make service on an individual named "Mr. Faure Eyadema" [who may be the same individual as Defendant Gnassingbe,] through "international express" in November 2007 under Fed. R. Civ. P. 4(f)(2)(C)(i). (*Id.* ¶ 9.) He also alleges that he "sent a letter and affidavits to the clerk of court to issue the Summons and Complaint" (*id.* ¶ 10), and that he "assumed the clerk of court would docket the

3

return receipt or indicate its failed attempts to obtain a signed return receipt." (*Id.* ¶ 11.) Plaintiff also "assumed the service of process was going through the State Department letter of rogatory/letter of request[.]" (*Id.* ¶ 12.) However, after some delay, Plaintiff states that he effected service of process on "Mr. Faure Eyadema on 01/10/2009 by international registered mail and return receipt" pursuant to a special arrangement under 28 U.S.C. § 1608(a)(1). (*Id.* ¶ 15.) He also states that he used this same method of service pursuant to a special arrangement to send the Summons and Complaint to Defendant Faure Essozimna Gnassingbe. (*Id.* ¶ 22.) Finally, Plaintiff states that he sent the Summons and Complaint to Defendant Gnassingbe using Minn. Stat. § 303.13. (*Id.* ¶ 23.)

## DISCUSSION

### I. Motion for Default Judgment

#### A. Legal Standard

Plaintiff now moves for an entry of default judgment under Federal Rule of Civil Procedure 55. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A Judgment of default may, thereafter, be entered on application to the Court." *Semler v. Klang*, 603 F. Supp. 2d 1211, 1218 (D. Minn. 2009) (citing Fed. R. Civ. P. 55(b) and *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998) ("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule

4

7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b).")). Whether to enter a default rests within the court's discretion. *Lee v. Bhd. of Maint. of Way Employees-Burlington N. Sys. Fed'n*, 139 F.R.D. 376, 381 (D. Minn. 1991).

Entry of default judgment is not warranted where a defendant has not been properly served. *See Burns v. Office of Attorney Gen.*, No. 08-CV-0858 (PJS/RLE), 2007 WL 2247600, at *5 (D. Minn. Aug. 2, 2007) ("To enter a default judgment, a court must have jurisdiction over the defaulting party, and the defendant must have been made party to the action by proper service of process."); *see also Brown v. Wachovia Bank*, 244 F.R.D. 16, 20 (D.D.C. 2007) (finding no basis for an entry of default against a defendant who had not been properly served). Further, "[n]o judgment of default shall be entered by a court of the United States . . . against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e).

### B. Analysis

#### 1. The Clerk of Court has not entered a default under Rule 55(a)

This Court recommends that Plaintiffs' motion for default judgment be denied for several reasons. First, the Clerk of Court has not entered a default under Rule 55(a). *See Johnson*, 140 F.3d at 783 ("[E]ntry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."). Plaintiff

5

argues that the Clerk of Court has entered a default against Defendants. (Doc. No. 6, ¶ 4.) This argument is frivolous. In support of this contention, Plaintiff attached his own applications for entry of default, which he filed on March 16 and 18, 2008. (*See* Doc. No. 6, Attachs. 5-6.) Although Plaintiff styled each of these submissions respectively as an "Entry of default" against Defendant Gnassingbe and Defendant Republic of Togo, they are plainly not an entry of default by the Clerk of Court pursuant to Rule 55(a). The Clerk of Court has not entered default under that Rule. Thus, this Court cannot enter a judgment of default against Defendants under Rule 55(b).

### 2. **Plaintiff has not established his claim or right to relief by satisfactory evidence**

Second, Plaintiff has not "establishe[d] his claim or right to relief by evidence satisfactory to the court." *See* 28 U.S.C. § 1608(e) (providing that default against a foreign state or instrumentality thereof may not be entered unless the plaintiff's right to relief is supported by sufficient evidence). The facts as alleged by Plaintiff's Complaint are, even given the benefit of a charitable construction from this Court, confusing and convoluted. Apparently, as part of a trip "to determine the genuineness of [an unspecified] deal[,]" Plaintiff paid someone named "Peter Collins['s]" expenses to travel to Sierra Leone. (Doc. No. 1, ¶ 8.) This trip apparently culminated in the "selection of plaintiff to be the Mbayo family exclusive United States agent to sell 400 kilograms of gold dust . . . in the American market." (*Id.* ¶ 9.) Peter Collins was then given the name of the

6

Mbayo family associate located in Togo who would be handling the shipment of the gold dust. (*Id.* ¶ 10.) Peter Collins then informed Plaintiff that he had seen the gold dust and wanted Plaintiff to visit Togo to work out an agreement. (*Id.* ¶ 11.)

Plaintiff was not pleased with the selection of a particular import/export company as the "middleman" (*id.* ¶ 12), so he "visited Mr. Shery K. Yosso, Director [of the import/export company] to discuss the agreement." (*Id.* ¶ 13.) Upon returning to the United States, Plaintiff had a sample of the gold dust tested, but was only able to obtain a buyer for small amounts of the gold dust at a time. (*Id.* ¶¶ 15, 17-18.) Plaintiff then agreed to send Mr. Yosso $1,000 for 2.4 kilograms of gold dust (*id.* ¶ 19), but Plaintiff thereafter received no shipment of gold dust and was unable, through subsequent efforts, to obtain any other gold dust for resale. (*Id.* ¶¶ 20-23.)

Plaintiff claims that Defendant Republic of Togo ("Republic of Togo") breached its treaty obligations by failing to "address the issue of breach of contract in one form or another[.]" (*Id.* ¶ 24.) He also asserts claims against Defendants as "third part[ies] to the contact," under the Treaty of Amity and Economic Relations, and under the United Nations Convention Against Transnational Organized Crime. (*Id.* ¶¶ 29-44.)

Plaintiff's allegations do not provide sufficient evidence for this Court to conclude that Plaintiff has established his claim or right to relief. The Complaint contains mere allegations, not evidence satisfactory to establish the legitimacy of

Plaintiff's claims.  In addition to the lack of any evidence necessary to support an entry of default judgment against Defendants under 28 U.S.C. § 1608(e), this Court notes that Plaintiff has made only the thinnest of allegations against either of the named Defendants.  Rather, his allegations tend to implicate third parties who he has not named as defendants, and it appears that Plaintiff is attempting to hold Defendants accountable for the unnamed parties' conduct.  Without expressly ruling on the merits of Plaintiff's claims against the Defendants, this Court has serious doubts about Plaintiff's ability to recover against them given the nature of his Complaint.

### 3. Plaintiff has not demonstrated that Defendants have been properly served

Third, Plaintiff has failed to sufficiently demonstrate that Defendants have been properly served.  Plaintiff apparently made the following efforts to serve Defendants: (1) he made a special arrangement under 28 U.S.C. § 1608(a)(1) with Togo's Ambassador to the United States, another person named "Mr. Faure Eyadema," and possibly with Defendant Faure Essozimina Gnassingbe; (2) he sent a copy of the Summons in French, along with the Complaint to "Mr. Faure Eyadema" in November 2007; (3) he requested that the Clerk of Court "issue the Summons and Complaint" and "assumed the service of process was going through the State Department letter of rogatory/letter of request"; and (4) he used Minn. Stat. § 303.13 to send the Summons and Complaint to Gnassingbe and to the Ministry of Foreign Affairs.

8

### (i) Service on Defendant Republic of Togo

Pursuant to Federal Rule of Civil Procedure 4(j), because the Republic of Togo is a "foreign state," service on that party "must be [made] in accordance with 28 U.S.C. § 1608." Under § 1608(a)(1), service on a foreign state can be achieved by delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision." If no such special arrangement exists, then § 1608(a)(2) authorizes delivery of a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." If neither of the methods in paragraphs (a)(1) or (a)(2) can be achieved, a plaintiff may send a copy of the summons and complaint and a notice of suit—along with a translation of each into the foreign state's official language—"by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the head of the ministry of foreign affairs of the foreign state concerned." § 1608(a)(3). Finally, if service under paragraph (a)(3) cannot be made within 30 days, a plaintiff can request that the clerk of court dispatch two copies of the summons and complaint and a notice of suit—along with a translation of each into the foreign state's official language—to the Secretary of State, who then "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted." § 1608(a)(4). These four methods for serving legal process on a foreign state are arranged "in descending

order of preference—meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on." *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 172 (D.D.C. 2006).

First, Plaintiff's contention that he had a special arrangement with the Republic of Togo for service under 28 U.S.C. § 1608(a)(1) is not supported by the record. Plaintiff has provided no proof that such an arrangement was entered with the Republic of Togo.

Second, section 1608(a)(2) does not apply because there is no international convention on service of judicial documents between the Republic of Togo and the United States. *See generally* Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 243. Plaintiff appears to argue that the Treaty of Amity and Economic Relations between the United States of America and the Togolese Republic, Feb. 8, 1966, 18 U.S.T. 1, 680 U.N.T.S. 159, is such an international convention. (S*ee* Doc. No. 14, Pl.'s Resp. to the Order to Show Cause to the Order April 3, 2009 ("Pl.'s Resp.") ¶ 21.) But that treaty does not contain any provision relating to the service of judicial documents. Plaintiff also appears to argue that the International Express Mail Agreement with Detailed Regulations, U.S.-Togo, Nov. 28, 1988 and Jan. 30, 1989 (not printed), somehow supports his assertion that he has made proper service. (*See* Pl.'s

Resp. ¶ 19.) But, again, this international agreement is irrelevant to the proper method for service of judicial documents under § 1608(a)(2).

Third, Plaintiff has not demonstrated compliance with the method of service provided in 28 U.S.C. § 1608(a)(3). Plaintiff indicates no efforts made to serve Defendant the Republic of Togo by sending a copy of the Summons and Complaint and a "notice of suit,"[1] along with a translation of each into the official language of Togo by a form of mail requiring a return receipt. *See* 28 U.S.C. § 1608(a)(3). There is no indication in the record that the Clerk of Court dispatched such documents to the head of Togo's Ministry of Foreign Affairs. *See id.* Plaintiff claims to have used the methods for service provided by Minn. Stat. § 303.13 to serve the Ministry of Foreign Affairs (Pl.'s Resp. ¶ 24), but use of a state long-arm statute for service on a foreign state is not an approved method of service under 28 U.S.C. § 1608(a)(3).

Finally, Plaintiff has not shown compliance with the method of service authorized by 28 U.S.C. § 1608(a)(4). Plaintiff argues that he requested that the Clerk of Court issue and later re-issue the Summons and Complaint (Pl.'s Resp. ¶¶ 10, 14), but making such a request for issuance of a summons does not satisfy the requirements of § 1608(a)(4). That section requires that a plaintiff send two copes of the summons and complaint and a notice of suit, along with a translation of each, by a form of mail requiring a return receipt, to be addressed

---

[1] The "notice of suit" is "a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation." 28 U.S.C. § 1608(a). The form for this notice is provided in 22 C.F.R. § 93.2.

11

and dispatched by the clerk of court to the Secretary of State in Washington, District of Columbia. § 1608(a)(4). The Secretary of State then must transmit the papers through diplomatic channels to the foreign state and provide the clerk of court with a note indicating that the papers were transmitted. *See id.* Plaintiff has made no showing that service was made pursuant to this procedure, nor has he indicated that compliance with this procedure was even attempted.

### (ii) Service on Defendant Gnassingbe

It is unclear whether Plaintiff named Gnassingbe as a defendant in his official capacity as President of the Republic of Togo, or in his individual capacity. To the extent Plaintiff is asserting claims against Gnassingbe in his official capacity, the foregoing analysis regarding service on the Republic of Togo applies, and this Court has already concluded that Plaintiff failed to serve the sovereign defendant. *See Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 64 (D.D.C. 2007) ("[T]he same . . . inquiry into service of process . . . that applies to the Iranian sovereign defendants also governs the exercise of jurisdiction over the official-capacity claims against the individual defendants."); *see also id.* at 67 (concluding that the former president of Iran "must be treated as the foreign state itself for purposes of service of process" for official-capacity claims). The following discussion addresses whether Plaintiff has demonstrated proper

service on Defendant Gnassingbe for any claims asserted against him in his individual capacity.[2]

Federal Rule of Civil Procedure 4(f) provides several options for service on an individual in a foreign country. First, service can be made by "any internationally agreed means . . . reasonably calculated to give notice," including as set out in a treaty. Fed. R. Civ. P. 4(f)(1). If no such agreement exists, then a plaintiff can serve an individual in a foreign country "as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A). Or service can be made "as the foreign authority directs in response to a letter rogatory or letter of request." Fed. R. Civ. P. 4(f)(2)(B). Another option for service in the absence of international agreement, so long as not prohibited by the foreign country's law, includes "delivering a copy of the summons and of the complaint to the individual personally[, or] using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Fed. R. Civ. P. 4(f)(2)(C)(i)-(ii). Finally, service can be made "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).

If service is made outside of the United States under Rule 4(f)(1), it must be proved as provided under the applicable treaty or convention. Fed. R. Civ.

---

[2] This Court does not now decide whether personal jurisdiction exists over any individual-capacity claims against Gnassingbe, but this Court notes that Plaintiff's Complaint contains no allegations regarding Gnassingbe's contacts with the United States that would be required for the exercise of either general or specific jurisdiction over such individual-capacity claims.

P. 4(l)(2)(A). If made under Rules 4(f)(2) or 4(f)(3), service must be proved "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(l)(2)(B).

As noted above, no international agreement exists for service of judicial documents between the United States and Togo, nor has Plaintiff provided evidence of any special arrangement between himself and Defendant Gnassingbe. Thus Rule 4(f)(1) is inapplicable. Nor has Plaintiff provided this Court with any indication that service was made pursuant to Rule 4(f)(2)(A).

With respect to Rule 4(f)(2)(B), Plaintiff suggests that "[d]uring the year of 2007, Plaintiff assumed the service of process was going through the State Department letter of rogatory/letter of request[,]" but such an assumption does not prove service "by a receipt signed by the addressee, or by other evidence satisfying the court that the summons and complaint were delivered to the addressee."[3] See Fed. R. Civ. P. 4(l)(2)(B) (noting that service must be proved in this manner if attempted under Rule 4(f)(2)). Nor has Plaintiff demonstrated that he personally served Defendant Gnassingbe pursuant to Rule 4(f)(2)(C)(i),

---

[3] Along with his response to this Court's Order to Show Cause, Plaintiff included what appears to be a return receipt for service. (Pl.'s Resp., Attach 1.) However, this submission appears to have been sent to the "Ghana Ministry of Foreign Affairs" in Accra, Ghana. (*Id.*) This submission, which concerns an entirely different African country than the one at issue here, is irrelevant to proof of service on either Defendant in this matter.

14

by registered mail requiring a return receipt under Rule 4(f)(2)(C)(ii), or by other means not prohibited by international agreement as provided in Rule 4(f)(3).

This Court therefore concludes that Plaintiff has failed to demonstrate that he has served either of the named Defendants in this matter. Because this Court concludes that Defendants have not been properly served, Plaintiff's default judgment motion must be denied. Having so concluded, this Court now addresses whether this case should be dismissed for failure to prosecute in a diligent fashion.

## II.     Failure to Prosecute

"A district court has discretion to dismiss an action under [Federal Rule of Civil Procedure] 41(b) for a plaintiff's failure to prosecute, or to comply with the Federal Rules of Civil Procedure or any court order." *Henderson v. Renaissance Grand Hotel*, 267 Fed. App'x. 496, 497 (8th Cir. 2008) (unpublished opinion); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (recognizing that a federal court has the inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases"). The facts and circumstances of each case should be evaluated to determine if dismissal for failure to prosecute is warranted. *Navarro v. Chief of Police, Des Moines, Iowa*, 523 F.2d 214, 217 (8th Cir. 1975). Where a plaintiff has failed to serve a foreign defendant within a reasonable time, courts have dismissed cases despite the inapplicability of Federal Rule of Civil Procedure 4(m)'s 120-day service deadline to service in a foreign country. *See Norton v. Belarus Mach. of USA, Inc.*, No.

15

Civ. A. 2:03CV946-D, 2005 WL 1421166, at *2 (M.D. Ala. June 9, 2005) (citing *In re Teligent, Inc.*, Nos. 01-12974 (SMB), 03-3577, 2004 WL 724945, at *3 (Bankr. S.D.N.Y. Mar. 30, 2004)); see also 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1137 at 388 (3d Ed. 2002) ("[I]f service in a foreign country is not pursued in a diligent fashion, the district court can dismiss the action because of the plaintiff's failure to prosecute.").

Plaintiff requests that this Court not dismiss his case for failure to prosecute. He asserts that he has no desire to purposefully delay the prosecution of this matter and that he has sought legal representation for a considerable period of time but has been unable to obtain it. He also contends that service on countries such as the Republic of Togo is difficult to achieve. (*See* Pl.'s Resp. ¶¶ 25-32.)

Plaintiff's assertions of his diligence in pursuing this case and the difficulty in serving Defendants notwithstanding, this Court finds that Plaintiff has failed to provide good cause for his failure to serve Defendants. The record indicates that Plaintiff has not made consistent efforts to serve these Defendants. Plaintiff's own response to this Court's Order to Show Cause indicates a delay of approximately one year between actions taken to achieve service in this matter. (Pl.'s Resp. ¶ 12 (noting an approximately one-year delay in which Plaintiff "assumed" service was moving forward).) Moreover, as discussed above, many of Plaintiff's sporadic efforts at service have come nowhere close to complying with the rules for service on a foreign state or an individual located in a foreign

country. The delay in this case is considerable. This action was filed almost two full years ago on October 3, 2007 (Doc. No. 1), and Plaintiff has still failed to effect service on either of the named Defendants. *See* discussion *supra* at Parts I.B.3.(ii)-(iii). Nothing in Plaintiff's response to this Court's April 3, 2009 Order to Show Cause suggests that granting any extension of time for Plaintiff to complete service will be fruitful. Under the facts and circumstances of this case, this Court concludes that Plaintiff's efforts at service do not show that he diligently pursued this matter. For these reasons, this Court recommends that this matter should be dismissed without prejudice pursuant to Rule 41(b).

## RECOMMENDATION

For the reasons stated, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion [for] Entry of Default and Default Judgment (Doc. No. 6), be **DENIED**; and

2. Plaintiff's Complaint (Doc. No. 1), be **DISMISSED WITHOUT PREJUDICE**.

Date: July 22, 2009

                                                *s/ Jeffrey J. Keyes*
                                                JEFFREY J. KEYES
                                                United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 5, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a

de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.